UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,

v.

Randall F. BRUCE, et al., Defendants.

Civ. A. No. 87–43–VAL (WDO).

United States District Court, M.D. Georgia, Valdosta Division.

March 15, 1988.

Wade H. Coleman, Valdosta, Ga., for plaintiff.

W.D. Perry, Nashville, Ga., O. Wayne Ellerbee, Valdosta, Ga., Diane Q. House, Atlanta, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

This declaratory judgment action was brought by United States Fidelity & Guaranty Company (USF & G) against Gwen Patrick O'Brien, individually and as Administrator of the Estate of Shawn Patrick O'Brien (hereinafter "the O'Briens"); Linda M. Bush, as next friend of Velvet M. Griner, a minor; Randall F. Bruce; Barbara McGill Bruce; and Diana Carmen Bruce. USF & G seeks to have a ruling from this court on the issue of whether the policy of insurance it issued to Irwin Utilities, Inc., policy number BAP 092677190, obligates it to cover a certain incident that occurred on May 9, 1987, involving a 1983 Z–28 Chevrolet Camaro. After USF & G withdrew its demand for a jury, this court held a non-jury trial on March 9, 1988, in order to hear evidence relating to the coverage question. The parties have now submitted all of the evidence, as well as legal precedent, that they wish the court to consider. The court is, therefore, in a position to render its decision.

### Findings of Fact

1. Irwin Utilities, Inc. procured a business auto policy from USF & G, policy number BAP 092677190, that covered all autos owned by Irwin Utilities, except those covered under a Texas auto policy, policy number 2CC082102240. USF & G has stipulated that even though the 1983 Z–28 Chevrolet Camaro was not specifically listed on USF & G's policy, since it was not covered by any Texas auto policy, the car would be a covered automobile if it was, in fact, owned by Irwin Utilities at the time of the May 9, 1987, incident.

2. The 1983 Z–28 Chevrolet Camaro was purchased by Irwin Utilities, Inc. in early 1983. Mr. Irwin drove it for a few months, and then in late 1983 or early 1984, he transferred possession of the car to Randall F. Bruce. Mr. Bruce is the father of Diana Carmen Bruce, the girl who was driving the Z–28 Chevrolet Camaro on May 9, 1987.

3. Beginning in 1984, Irwin Utilities, Inc. forwarded tag receipts, tag decals, and insurance cards on the Z–28 Camaro to Mr. Bruce.

4. On May 9, 1987, the 1983 Z–28 Chevrolet Camaro was titled in Florida under the name of Irwin Utilities, Inc., it had a Florida license tag, and had been so titled and registered since it was originally purchased in 1983 by Gordon Irwin of Irwin Utilities, Inc.

5. The evidence demonstrated that Mr. Bruce got the Z–28 Camaro from Irwin Utilities as compensation for consulting work that he was doing for Irwin Utilities. The deal reached by Mr. Bruce and Mr. Irwin with respect to this car was that Mr. Irwin would maintain the insurance, tag receipts, and tag decals on the car, but that Mr. Bruce would be entitled to unlimited use of the vehicle. Mr. Bruce was obligated, however, to properly maintain the car and to pay for any repairs that it needed.

6. From 1983–85, Irwin Utilities had also given possession of at least four (4) other vehicles to Mr. Bruce. With two (2) of these vehicles Mr. Bruce was given title to the cars simultaneously upon transfer of possession. With the other two (2) cars, Irwin Utilities did not transfer title, but provided tag receipts, tag decals and insurance cards to Mr. Bruce.

7. When Gordon Irwin gave possession of the Z–28 Chevrolet Camaro to Mr. Bruce,

he did not limit the use of the car to persons eighteen (18) years of age or older. Rather, the car was given to Mr. Bruce for his personal use, which included allowing his family to drive the car.

8. Immediately prior to the May 9, 1987, incident, Gordon Irwin had decided to give the Z–28 Chevrolet Camaro to Mr. Bruce. Mr. Irwin was in the process of paying off the lien on the car and transferring title to Mr. Bruce when the car was involved in the May 9, 1987, incident.[1] At the time of the collision, Mr. Irwin had not dropped the car from Irwin Utilities' insurance policy. Mr. Irwin testified that the coverage was not dropped prior to this time because he was concerned that something might occur with the car before the transference of title to Mr. Bruce could be completed.

9. It was Mr. Bruce's understanding that until he received title to the Z–28 Chevrolet Camaro from Irwin Utilities, the car did not belong to him. In fact, if Mr. Irwin had requested the car back, Mr. Bruce believed that he was under an obligation to return the car to Irwin Utilities, Inc. This last fact is supported by the undisputed evidence that Mr. Irwin had, on a prior occasion, requested that the car be returned so that Mr. Irwin's girlfriend could use it.

### Conclusions of Law

USF & G asserts two reasons why it should not be required to cover the incident that occurred on May 9, 1987. First, it asserts that Diana Carmen Bruce did not have permission from Irwin Utilities, Inc. to operate the car. In the alternative, USF & G asserts that Irwin Utilities, Inc. had transferred ownership of the Z–28 Camaro to Mr. Bruce prior to the May 9, 1987, incident, and that, therefore, the car was no longer covered by its policy of insurance. USF & G cites the court to the provision in the policy that defines the term "insured" to support these arguments. Section D of Part IV provides:

D. WHO IS INSURED

   1. You are an insured for any covered auto.

   2. Anyone else is an insured while *using with your permission* a covered auto *you own,* hire or borrow.... (emphasis added).

█ USF & G's first contention is that Diana Carmen Bruce's use of the car was not authorized because when Gordon Irwin transferred the car to Mr. Bruce, Mr. Bruce allegedly agreed to not let anyone under eighteen (18) years of age drive the vehicle. The court finds as a matter of fact, however, that no such agreement concerning the use of the car was ever made. This conclusion is supported by the additional fact that despite Mr. Irwin's full knowledge of what persons in the Bruce's household were using the Z–28 Camaro, never once prior to May 9, 1987, did he try to either restrict this use or withdraw his permission to use the car. USF & G's argument that Diana Carmen Bruce was not an "insured" under the policy because Irwin Utilities, Inc. had not granted her permission to use the car is, therefore, rejected.

█ USF & G's second argument that Irwin Utilities, Inc. was not the owner of the Z–28 Camaro at the time of the May 9, 1987, incident must also fail for the following reasons. It is clear that on May 9, 1987, title to the Z–28 Camaro was vested with Irwin Utilities, Inc. Under Florida law, this fact alone establishes a *prima facie* presumption of ownership in the person listed on the title. *See Fischer v. Bernard's Surf,* 217 So.2d 576 (Fla.App.1969). USF & G has attempted to rebut this presumption by showing that legal title to the car was in the process of being transferred, that Mr. Bruce had full possession of the vehicle, and that no further consideration was to be paid prior to the transfer of legal title.

In deciding who was the actual owner of the vehicle on May 9, 1987, the court finds the case of *Hogan v. Keen,* 349 So.2d 175 (Fla.App.1977) to be controlling. This case holds that the intent of *both* parties is crucial in determining the ownership of the vehicle. While the court is persuaded that

---

1. Mr. Bruce was unaware of these efforts being made by Mr. Irwin to transfer title and ownership of the car to Mr. Bruce. Nor was Mr. Bruce aware of the fact that Mr. Irwin had ultimately decided to give the Z–28 Camero to him.

Mr. Irwin had decided prior to May 9, 1987, to transfer ownership of the Z–28 Camaro to Mr. Bruce, the court further finds, however, that Mr. Bruce did not believe that he was the owner of the car until title to the car was actually transferred to him, as it had been done with the two other cars given to him by Irwin Utilities, Inc. Prior to May 9, 1987, Mr. Irwin never expressed to Mr. Bruce that, even though title had not been transferred, the car was now owned by him. Without this type of understanding, the court simply must find that there was no mutual intent to transfer ownership of the Z–28 Camaro before May 9, 1987.[2] Accordingly, this court must conclude that Irwin Utilities, Inc. was the owner of the Z–28 Camaro on May 9, 1987.

### Conclusion

The court, thus, has found that Carmen Diana Bruce was operating the Z–28 Camaro on May 9, 1987, with the permission of Irwin Utilities, Inc. The court has also found that Irwin Utilities, Inc. was the owner of the vehicle on May 9, 1987. As such, Diana Carmen Bruce is an "insured" under USF & G's policy of insurance and she is, therefore, entitled to coverage under that policy.

2. The court also finds persuasive the following case law:
Young v. Young, 382 So.2d 355 (Fla.App.1980); North Florida Motor Co. v. Pembleton, 225 So.2d 349 (Fla.App.1969); Pennsylvania National Mutual Casualty Insurance Co. v. Ritz, 284 So.2d 474 (Fla.App.1973); and Barnett v. Butler, 112 So.2d 907 (Fla.App.1959).